UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Linda G.,

          Plaintiff,

          v.                                Civil Action No. 2:21–cv–48–kjd

Commissioner of Social Security,

          Defendant.

## OPINION AND ORDER
(Docs. 13, 14)

Plaintiff Linda G. brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  Pending before the Court are Plaintiff's motion to reverse the Commissioner's decision (Doc. 13), and the Commissioner's motion to affirm the same (Doc. 14).  For the reasons stated below, Plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

## Background

Plaintiff was 49 years old on her alleged disability onset date of November 28, 2016. (AR 520.)  She graduated high school after taking special education courses and completed two years of college.  (*Id.*)  She has worked as a delivery driver, a meat clerk, a hospital cleaner, and an inventory taker.  (AR 531.)  Plaintiff is twice divorced and has five children, two of whom were adopted out of her care over ten years ago.  (AR 315, 662, 847, 859.)  Plaintiff last reported to be living with her son, his girlfriend, and his four children (AR 338), after living in a shelter in Barre, Vermont (AR 339, 567).

Plaintiff has been diagnosed with spondylolisthesis,[1] bilateral sacroiliitis,[2] arthritis in the hands, bilateral knee pain, morbid obesity, irritable bowel syndrome, diverticulosis,[3] and diverticulitis.[4]  (AR 861, 870, 968, 974, 976, 1025, 1047.)  She has received bilateral sacroiliac joint injections to assist with her back pain.  (AR 1048.)  Plaintiff claims that diverticulitis causes her "excruciating pain," and she must be near a bathroom for up to half an hour after she eats. (AR 320.)  While her diet is "supposed to [have] a lot of high fiber," she has almost "no teeth," which makes eating "hard, raw" high-fiber food difficult.  (*Id.*; *see* AR 849.)  She reported that she is able to do the following activities: take her son's two dogs out "for a short walk on his land"; prepare "simple foods" daily and "complete meals" once or twice a week; clean the refrigerator; and do dishes, laundry, vacuuming, and sweeping.  (AR 568–69.)

She also suffers from chronic depression, posttramatic stress disorder (PTSD), panic disorder, and social anxiety.  (AR 870, 917, 1025–26, 1046–47.)  In February 2018, Plaintiff told her therapist that she experienced sexual abuse starting at the age of nine.  (AR 662; *see* AR 847.)  She noted that she had a history of cocaine use, but she is now clean.  (AR 662, 338.) Plaintiff still struggles with the effects of her mother's death in 2005.  (AR 662.)  She has visited

---

[1]  Spondylolisthesis is the "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or on the sacrum."  *Spondylolisthesis*, Stedmans Medical Dictionary 840330, Westlaw (database updated November 2014).

[2]  Sacroiliitis is the "[i]nflammation of the sacroiliac joint."  *Sacroiliitis*, Stedmans Medical Dictionary 793740, Westlaw (database updated November 2014).

[3]  Diverticulosis is the "[p]resence of a number of diverticula of the intestine, common in middle age; the lesions are acquired pulsion diverticula."  *Diverticulosis*, Stedmans Medical Dictionary 262500, Westlaw (database updated November 2014); *see also Diverticulum*, Stedmans Medical Dictionary 262510, Westlaw (database updated November 2014) (defining diverticulum as "[a] pouch or sac opening from a tubular or saccular organ, such as the gut or bladder").

[4]  Diverticulitis is the "[i]nflammation of a diverticulum, especially of the small pockets in the wall of the colon which fill with stagnant fecal material and become inflamed; rarely, they may cause obstruction, perforation, or bleeding."  *Diverticulitis*, Stedmans Medical Dictionary 262470, Westlaw (database updated November 2014).

the emergency room for her panic attacks and has attempted suicide once.  (AR 638, 1031, 1045.)  In a March 2018 Function Report, Plaintiff wrote that sometimes her depression is so bad that she "can't get out of bed," "cr[ies] all day," and "lo[ses] int[e]rest in things that [she] liked to do."  (AR 542.)  In a July 2018 Function Report, Plaintiff wrote that deep, loud voices scare her and that she has unpredictable anxiety and panic attacks.  (AR 567.)

On January 31, 2018, Plaintiff filed an application for Title II Social Security Disability Insurance Benefits (AR 377), and on June 6, 2019, she filed an application for Title XVI Supplemental Security Income Benefits (AR 1083).[5]  In her application for DIB, Plaintiff alleged disability due to severe depression, anxiety, panic attacks, PTSD, arthritis in hands, chronic low back pain, bilateral knee pain, morbid obesity (AR 519).  She subsequently added diverticulosis and diverticulitis (AR 576).  Plaintiff's application was denied both initially and on reconsideration, and she filed a timely request for a hearing.  On July 17, 2019, Administrative Law Judge (ALJ) Dory Sutker conducted the hearing, at which Plaintiff was represented by counsel.  (AR 305.)  On September 5, 2019, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act from her alleged disability onset date through the date of the decision.  (AR 250–80.)  On November 1, 2019, Plaintiff filed a request for Appeals Council review.  (AR 468–70; see AR 616.)  Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–7.)  Having exhausted her administrative remedies, Plaintiff filed the Complaint in this action on February 26, 2021.  (Doc. 3.)

---

[5]  Plaintiff indicated that she intended to file her SSI application with her DIB application on January 31, 2018 (AR 1141), and the ALJ agreed to deem both applications as filed that day (AR 312).  No party challenges this finding.

**ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims.  *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).[6]  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383, and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do,"

---

[6] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

*Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that, at step five, the

Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Plaintiff had not

engaged in substantial gainful activity since November 28, 2016, the alleged onset date.  (AR

255.)  At step two, the ALJ found that Plaintiff had the following severe impairments: obesity,

degenerative disc disease, diverticulitis/diverticulosis/irritable bowel syndrome, right knee

osteoarthritis, depressive disorder, anxiety disorder/social anxiety/panic disorder, and PTSD.

(*Id.*)  At step three, the ALJ determined that none of Plaintiff's impairments, alone or in

combination, met or medically equaled a listed impairment.  (AR 256–59.)  In the "B" criteria of

the mental health listings, the ALJ found that Plaintiff had a mild limitation in understanding,

remembering, or applying information, and a moderate limitation in interacting with others,

concentrating, persisting, or maintaining pace, and adapting or managing herself.  (AR 257–59.)

Next, the ALJ determined that Plaintiff had the RFC to perform "light work," as defined

in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] could not climb ladders, ropes or scaffolds.  Other postural activities
> could be performed on an occasional basis.  She would be limited to work
> environments with no more than moderate noise level, and she could not be exposed
> to hazards such as unprotected heights and dangerous moving machinery.  She must
> avoid exposure to extreme cold, but she could tolerate occasional exposure to
> humidity, wetness, dust, fumes, odors, gases, and other pulmonary irritants and
> vibration.  She could perform uncomplicated tasks, defined as tasks typically
> learned in less than 30 days.  She could concentrate, persist at tasks, and stay on
> pace for 2-hour blocks throughout the workday consistent with regularly scheduled
> breaks and lunch.  She would need an environment where the tasks are not strictly
> timed and an environment where there is no belt work.  She could engage in only
> incidental contact with the general public, meaning dealing with the public could
> not be part of the job duties.  She could tolerate brief encounters, such as passing
> someone in a hallway.  She needs an environment where tasks are generally
> performed in a solitary manner but could tolerate tandem tasks up to 10% of the
> workday.  In such a setting, she could otherwise collaborate with co-workers and
> supervisors on routine matters.  She could adapt to occasional and routine changes.

(AR 259–60.)  Given this RFC, the ALJ found that Plaintiff was not capable of performing any of her past relevant work as a hospital cleaner, meat clerk, or cashier/checker, as the work was actually or is generally performed.  (AR 278.)  However, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including the jobs of price marker, collator operator, and mail sorter.  (AR 279.)  The ALJ concluded that Plaintiff had not been under a disability from the alleged onset date of November 28, 2016 through the date of the decision.  (AR 280.)

### Additional Evidence Submitted to the Appeals Council

In appealing the ALJ's decision to the Appeals Council, Plaintiff included new progress notes from her therapy treatment dating from July 2019 to August 2020.  (AR 8–68, 79–134.) She also included new treatment records from July 2019 to August 2020, addressing both physical and mental health concerns (AR 69–78, 135–227), and a new Medical Source Statement from her treating orthopedic provider Sarah L. Britton, NP, dated October 4, 2019.  (AR 233–39; *see* AR 240–49.)

After reviewing these records, the Appeals Council denied Plaintiff's request for review because (1) all newly submitted evidence following September 5, 2019—the date of the ALJ decision and the end of the period at issue—would not affect the ALJ's decision regarding whether Plaintiff was disabled on or before that date; and (2) the newly submitted records applicable to the period at issue did not show a reasonable probability that they would change the ALJ's decision.  (AR 2.)

### Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

6

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard."  *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g).  The Court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support that decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.").  "Substantial evidence" is "more than a mere scintilla"; "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305.  The substantial evidence standard is "very deferential," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Nonetheless, in its deliberations, the Court should bear in mind "that the Social Security Act is a remedial statute to be broadly construed and liberally applied."  *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because: (1) the ALJ erred when evaluating the opinion evidence; (2) the ALJ erred in failing to consider all of Plaintiff's severe impairments while assessing her RFC; and (3) the Appeals Council erred by not considering the newly submitted opinion and treatment records.  (Doc. 13-2.)  The Commissioner responds that: (1) the ALJ properly found the treating sources' opinions to be less persuasive than the state agency consultants' assessments; (2) Plaintiff has not proven that she would miss work for treatment; and (3) new evidence submitted to the Appeals Council did not so dramatically alter the weight of the evidence as to require remand.  (Doc. 14.)

After considering the parties' arguments and reviewing the record, the Court finds that the ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision.

**I.      The ALJ's assessment of the medical opinions was proper.**

Plaintiff argues that the ALJ erred in finding (i) the opinion of treating provider Jenniffer Funk-Weyant, a family nurse practitioner, to be only "partially persuasive" on mental health limitations; (ii) the opinions of treating provider Kaitlyn Mulcahy, licensed psychologist, and provider Margaret Joyal, licensed psychologist-master,[7] to be "unpersuasive" on mental health limitations; (iii) the opinion of NP Funk-Weyant to be "unpersuasive" on physical limitations; (iv) the opinion of non-treating, non-examining state agency consulting physician Geoffrey Knisely, MD, to be "partially persuasive" on physical limitations; and (v) the opinion of non-treating, non-examining state agency consulting psychologists John Petty, PsyD., and John J. Warren, EdD., to be "persuasive" on mental health limitations.

---

[7]  The only role that Joyal appears to have had in Plaintiff's treatment is as supervising psychologist.  (*See* AR 13, 1073.)

The Court finds no error in the ALJ's assessment of the medical opinions. As required by the new regulations governing the assessment of medical opinions, the ALJ explained her findings regarding the supportability and consistency of each opinion, pointing to specific evidence in the record supporting these findings.

### A.    New Regulation Regarding Assessment of Medical Opinions

For applications filed on or after March 27, 2017, the Social Security Administration has fundamentally changed how ALJs assess the medical opinions of treating sources. Previously, the "treating physician rule" mandated that the ALJ assign "controlling weight" to a "well-supported" treating source's medical opinions that are "not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). If controlling weight is not afforded to these opinions, the ALJ was required to apply certain factors in determining what weight to afford them. *Id. see Schisler v. Sullivan*, 3 F.3d 563, 567–69 (2d Cir. 1993); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

The new regulations, however, provide that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, ALJs must "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record," *id.* § 404.1520c(b), considering the same enumerated "factors" considered under the prior regulation "as appropriate," *id.* at § 404.1520c(a) (see "factors" listed at *id.* § 404.1520c(c)), and following the particular "requirements" listed in 20 C.F.R. § 404.1520c(b).

Under the new regulations, the "most important factors" to be considered when evaluating the persuasiveness of medical opinions and prior administrative medical findings are

"supportability" and "consistency." *Id.* § 404.1520c(a).  Under the regulations,

"[s]upportability" means that "[t]he more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support [the] medical opinion(s) or prior

administrative medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).  "Consistency" means that

"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

The ALJ must explain how she "considered the supportability and consistency factors for a

medical source's medical opinions or prior administrative medical findings." *Id.*

§ 404.1520c(b)(2).  In addition, the ALJ "may, but [is] not required to," explain how she

considered the following three factors, *id.*: (1) the medical source's relationship with the

claimant, including the length of the relationship and the frequency of examination, (2) the

medical source's area of specialization, and (3) "other factors that tend to support or contradict a

medical opinion or prior administrative medical finding," *id.* § 404.1520c(c)(3)–(5).  Where the

ALJ has found two or more medical opinions to be "[e]qually persuasive" (meaning "equally

well-supported . . . and consistent with the record"), but "not exactly the same," the ALJ "will

articulate" how she considered these latter three factors. *Id.* § 404.1520c(b)(3).

### B.     Medical Opinions

#### 1.     NP Funk-Weyant's Opinion Regarding Plaintiff's Mental Capabilities

Plaintiff began seeing Family Nurse Practitioner Jenniffer Funk-Weyant as her primary

care provider on March 27, 2019.  (AR 1045.)  In a June 25, 2019 Medical Source Statement,

NP Funk-Weyant assessed that anxiety, depression, and PTSD from sexual assault made it

"hard" for Plaintiff to function in crowds.  (AR 1114.)  She further noted, however, that Plaintiff

had no difficulty responding appropriately to supervision, coworkers, and the public.  (*Id.*)

Accordingly, NP Funk-Weyant opined that Plaintiff had moderate limitations in understanding,

remembering, and carrying out complex instructions and making judgments on complex, work-

related decisions; a slight limitation in making judgments on simple, work-related decisions; and

no limitation in understanding, remembering, and carrying out short, simple instructions.  (AR

1113.)

The ALJ found this opinion only partially persuasive.  The ALJ explained that: (i) the

opinion is "in checklist form"; (ii) the opinion "appears [to be] based on the claimant's self-

reports"; and (iii) "some of the limitations contained [in the opinion] do not correlate with

limitations cited in [the] mental health treatment notes" or "the claimant's reported activities of

daily living."  (AR 276.)

The ALJ properly analyzed NP Funk-Weyant's opinion regarding Plaintiff's mental

capabilities.  First, the ALJ reasonably found the opinion less persuasive because it was in

checklist form.  (*Id.*)  The fact that a medical provider gives an opinion in checklist form is not

alone a sufficient reason to reject its contents.  *See Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir.

2022) (finding that ALJ may not discount evidentiary weight of treating physician's opinion

based merely on "the naked fact that it was provided in a check-box form").  The ALJ may rely

on such form opinions "where the clinical and diagnostic bases for the opinion are included."

*Gerbasi v. Comm'r of Soc. Sec.*, No. 5:14-cv-246, 2015 WL 4470001, at *8 (D. Vt. July 21,

2015).  Here, however, NP Funk-Weyant did not provide evidence to support her selected

limitations, even though the form instructed her to "[i]dentify the factors . . . that support [the]

assessment."  (AR 1114; *see* AR 1113 (admonishing provider that "[i]t is very important to

describe the factors that support your assessment[, as] [w]e are required to consider the extent to which your assessment is supported")); *see also Heaman v. Berryhill*, 765 F. App'x 498, 501 (2d Cir. 2019) ("The ALJ here provided 'good reasons' for giving the treating physicians' opinions less weight, including that their opinions were 'merely checkbox forms that offer little or nothing with regard to clinical findings and diagnostic results' . . . ." (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998))).

The ALJ also found that NP Funk-Weyant's opinion was less persuasive because it was based on Plaintiff's self-reporting instead of objective medical evidence.  (AR 276.)  Although generally a medical opinion that is supported by objective medical evidence has higher persuasive value, *see* 20 C.F.R. § 401.1520c(c)(1), this type of evidence may not exist in the context of a psychological opinion.  In that situation, "[t]he treatment provider's perspective would seem all the more important" because cases involving psychological impairments "are not susceptible to clear records such as x-rays or MRIs."  *Flynn v. Comm'r of Sec. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018).  Rather, these types of cases "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations."  *Id.*; *Stacey v. Comm'r of Soc. Sec. Admin.*, 799 F. App'x 7, 9 (2d Cir. 2020) (finding "unrealistic" ALJ's "apparent expectation that a psychological opinion [may] be formed only after diagnostic testing").  Nevertheless, the ALJ may consider the extent to which the opinion relies on those self-reports, as well as the opinion's consistency with the record evidence.  *See Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 185 (N.D.N.Y. 2019) (finding that the ALJ "struck a permissible balance" when discounting an opinion that relied on claimant's self-reports where ALJ cited inconsistent objective mental health evidence in the record).

In finding NP Funk-Weyant's opinion only partially persuasive, the ALJ properly determined that Plaintiff's self-reports of her limitations were inconsistent with other evidence in the record.  (AR 276.)  Specifically, the ALJ noted that several of NP Funk-Weyant's opined limitations are inconsistent with Plaintiff's daily activities.  (*Id.*)  NP Funk-Weyant opined that Plaintiff was limited in her ability to spend time in crowds.  However, Plaintiff reported that she routinely spent time in public when she went to the library, the park, churches, and the Salvation Army.  (AR 339–40; *see* AR 916–17.)  The ALJ reasonably found these activities to be inconsistent with NP Funk-Weyant's opinion regarding Plaintiff's limited ability to spend time in crowds.  *See* 20 C.F.R. § 404.1520c(c)(2).

The ALJ further found that some of the limitations in NP Funk-Weyant's opinion were inconsistent with "limitations cited in mental health treatment notes."  (AR 276.)  In a six-month review of Plaintiff's individual care plan in July 2018, Mulcahy and Joyal noted "good" progress for three out of her four goals in therapy.  (AR 965.)  They explained that while Plaintiff's prior living arrangements "caused considerable amounts of stress," "[l]iving at the shelter and being required to leave during the day has helped [Plaintiff] with her ability to push back against depressive symptoms."  (*Id.*)  They noted that Plaintiff had also "improved her ability to set boundaries."  (*Id.*)  Throughout 2018 and 2019, Mulcahy's treatment notes frequently observed that Plaintiff was making progress in her therapy sessions towards her goals and objectives.  (AR 887, 889, 891, 904, 931, 938, 940, 942, 951, 961, 1063 (reporting "good progress"); AR 893, 895, 946, 959, 1000, 1006, 1008, 1010, 1012, 1061, 1065, 1069, 1071 (reporting "some progress").)

Regarding the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with Funk-Weyant's assessed limitations, Plaintiff contends that the ALJ engaged in "cherry-

picking of the evidence" in finding these activities relevant, and that these activities do not support Plaintiff's ability to successfully perform a job.  (Doc. 13-2 at 7.)  However, the ALJ did not cite these activities as evidence of Plaintiff's ability to work.  Rather, she cited them to support the assessment that NP Funk-Weyant's opinion is not consistent with the record, as the regulations require in evaluating treating provider opinions.  *See* 20 C.F.R. § 404.1520c(c)(2).  Plaintiff also cites record evidence supporting NP Funk-Weyant's opinion.  (Doc. 13-2 at 5.)  For example, Plaintiff references her questionnaire score indicating she has high anxiety and severe depression.  (*Id.* at 5–6 (citing AR 1046–47)); mental health providers' treatment notes generally documenting Plaintiff's "struggles and limitations" (*id.* at 6 (citing AR 658–851, 872–911, 920–65, 985–1016, 1050–73, 1144–64)); and Plaintiff's trip to the emergency room for depression and suicidal ideation (*id.* (citing AR 1031, 1038)).  However, the Court will reverse a factual finding of the ALJ only where it "would *have to conclude*" Plaintiff's interpretation is the correct one.  *See Brault*, 683 F.3d at 448.  Given the ALJ's well-reasoned findings—and the cited evidence that is inconsistent with NP Funk-Weyant's opined mental-health limitations—this record evidence alone does not require the Court to conclude that NP Funk-Weyant's opinion was consistent with the evidence and thus deserving of a higher persuasive value.

Notwithstanding the ALJ's conclusion that NP Funk-Weyant's opinion was partially persuasive, the ALJ's RFC finding was consistent with NP Funk-Weyant's opined limitations.  For example, Funk-Weyant opined that Plaintiff had no limitations in understanding, remembering or carrying out short, simple instructions; slight limitations in making simple, work-related decisions; and moderate limitations in understanding, remembering, or carrying out complex instructions or making complex decisions.  (AR 1113.)  The ALJ similarly found that Plaintiff could complete uncomplicated tasks.  (AR 259.)  Moreover, the ALJ's finding that

Plaintiff could have only incidental contact with the public and required a largely solitary working environment involving brief encounters with the public (AR 259–60), is consistent with NP Funk-Weyant's limitation on Plaintiff's ability to function in crowds (AR 1114). Accordingly, even if the ALJ had found NP Funk-Weyant's opinion to be more than "partially persuasive," the ALJ's RFC determination was ultimately consistent with the opinion.

### 2.      Mulcahy and Joyal's Opinion

Licensed Psychologist Kaitlyn Mulcahy, MA, began treating Plaintiff on January 30, 2018, on a weekly basis through individual and group psychotherapy.  (AR 1170; *see* AR 1175.) Mulcahy completed a Mental Impairment Questionnaire on July 16, 2019, which was also signed by Licensed Psychologist-Master Margaret Joyal.  (AR 1178; *see* AR 13.)  In it, Mulcahy and Joyal assessed major depressive disorder and, despite Plaintiff receiving mental health treatment on an ongoing basis, they determined that Plaintiff had achieved only "marginal adjustment"[8] with episodes of deterioration.  (AR 1170–72.)  They listed a variety of Plaintiff's signs and symptoms, including "[d]iminished interest in almost all life activities"; "[s]leep disturbance"; "[d]ecreased energy"; "[a]ppetite disturbance with a change in weight"; and "[t]houghts of death or suicide."  (AR 1172–73.)  As a result, they opined that Plaintiff had a moderate limitation in accepting and responding appropriately to criticism from supervisors; getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress.  (AR 1174.)  Mulcahy and Joyal also opined that Plaintiff had a "moderate" limitation in "understanding, remembering, or applying information" and in "concentrating, persisting, or maintaining pace."  (AR 1174, 1175.)  In their opinion, Plaintiff

---

[8]  The questionnaire states that a patient has achieved only "marginal adjustment" when "the patient's adaptation to daily life is fragile, with minimal capability to adapt to changes in their environment or to demands that are not already part of their daily life."  (AR 1172.)

had "marked" limitations when interacting with others and adapting or managing herself.

(AR 1175.)  Finally, Plaintiff could be expected to perform a job at less than 80% the efficiency

rate of an average worker.  (*Id*.)  They further opined that Plaintiff would miss four or more days

of work per month.  (*Id*.)

The ALJ found this opinion to be unpersuasive.  In articulating the reasons for this

assessment, the ALJ noted that—like NP Funk-Weyant's opinion—"the opinion is in checklist

form and appears based on [Plaintiff's] self-reports."  (AR 276.)  Additionally, the ALJ

explained that the opinion's limitations "are not supported by the longitudinal record."  (*Id.*

at 277.)  The ALJ discussed specific evidence in the record that was inconsistent with the

opinion, including "mental status examinations that were generally normal with good eye

contact, intact orientation, no evidence of hallucinations or delusions, and no evidence of

significantly impaired judgment or insight."  (*Id.* at 278.)  Additionally, "[c]ounseling progress

notes reflect management of symptoms associated with psychosocial stressors."  (*Id.*)  The ALJ

also explained that, while Plaintiff visited the emergency room with anxiety symptoms and

attempted suicide once, she was "never admitted for inpatient psychiatric treatment."  (*Id.*)

Substantial evidence supports these findings.  The ALJ found Mulcahy and Joyal's

opinion to be unsupported for several reasons.  In particular, they provided a checklist opinion

without sufficient "clinical and diagnostic bases" supporting its reasoning.  *See Gerbasi*, 2015

WL 4470001, at *8.  A psychological opinion may properly be based on medical "signs."  *See*

20 C.F.R. § 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or

both.").  "Psychiatric signs are medically demonstrable phenomena that indicate specific

psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory,

orientation, development, or perception, and must also be shown by observable facts that can be

medically described and evaluated." *Id.* § 404.1502(g); *see Sanfilippo v. Colvin*, No. 14-CV-3067 (RRM), 2016 WL 1252757, at *2, 8 (E.D.N.Y. Mar. 27, 2016) (finding that psychiatrist adequately supported checklist opinion with "precisely" the psychiatric signs the regulations require by making "clinical findings includ[ing] poor memory, sleep disturbance, personality change, mood disturbance, emotional lability, delusions or hallucinations, difficulty thinking or concentrating, suicidal ideation or attempts, social withdrawal or isolation, decreased energy, and generalized persistent anxiety"), *judgment entered*, 2016 WL 1226752 (E.D.N.Y. Mar. 27, 2016).

In response to the form's inquiry requesting the "patient's signs and symptoms," Mulcahy and Joyal checked several observable facts showing abnormalities of behavior and mood such as "[d]ecreased energy" and "[a]ppetite disturbance with a change in weight." (AR 1172.) However, they did not explain how these signs were associated with the diagnosis of major depressive disorder or supported the opined functional limitations on her ability to work. *See Halloran*, 362 F.3d at 32 (finding that the ALJ committed no error in according less weight to checklist opinions that "were not particularly informative"); *cf. Harbot v. Berryhill*, 335 F. Supp. 3d 382, 386 (W.D.N.Y. 2018) ("While the form Dr. Ahmed used did contain some check-boxes, the opinion was fully supported by narrative explanations . . . .").

More importantly, the ALJ found that the checkbox opinions of Mulcahy and Joyal were inconsistent with the record. Mulcahy reported in her January 2018 progress notes that Plaintiff was cooperative and fully oriented with appropriate affect; normal speech; calm motor function; normal thoughts; and intact memory, judgment, and insight. (AR 663–64.) Additionally, Psychologist Gregory Korgeski noted in July 2018 that while Plaintiff presented as mildly anxious, she was also cooperative and polite, with normal speech, neutral mood, normal

thoughts, and average cognitive ability, scoring 30/30 on a mini-mental status examination.

(AR 912, 916.)  Providers Jessie Leyse, MD, and Nurse Practitioners Sarah Britton, Janis Finelli,

Jenniffer Funk-Weyant, Jordice Corey, and Pascale Stephani also observed that Plaintiff was

alert, oriented, pleasant and cooperative.  (AR 967, 979, 983, 1024, 1027, 1046, 1077, 1080,

1107.)  Together, these notes provide substantial evidence supporting the ALJ's finding that

Mulcahy's opinion was not consistent with the record.  *See Jaice P. v. Saul*, Case No. 5:20-cv-

78, 2021 WL 3284888, at *7–8 (D. Vt. June 2, 2021) (finding that substantial evidence supported

ALJ's decision to give mental health opinion little weight when record included medical notes

stating claimant was "oriented to person, place, and time," "calm," and "exhibit[ed] 'normal'

judgment"), *appeal filed sub nom. Plumb v. Comm'r of Soc. Sec.*, No. 21-1856 (2d Cir. July 30,

2021); *Laurie M. v. Comm'r of Soc. Sec. Admin.*, Case No. 2:18-cv-00094, 2020 WL 4282227, at

*6 (D. Vt. July 27, 2020) (finding no ALJ error in affording little weight to mental health opinion

where ALJ noted that claimant scored 29/30 on mini-mental status examination, "indicating no

cognitive impairment").  Substantial evidence supports the ALJ's conclusion that Mulcahy and

Joyal's opinions were unpersuasive.

Plaintiff contends that the objective evidence that the ALJ considered—including eye

contact, orientation, hallucinations, delusions, judgment, and insight—is "not among the

diagnostic criteria for PTSD, chronic depressive disorder, panic disorder, and social anxiety."

(Doc. 13-2 at 9.)  However, the ALJ did not question Mulcahy and Joyal's diagnoses—in fact,

the ALJ found these diagnoses to be severe impairments at step two of the analysis.  (*See* AR

255.)  Rather, the ALJ cited this objective evidence in the record only to support her finding that

the opinion of Mulcahy and Joyal as to Plaintiff's limitations was inconsistent with the record

evidence.  *See* 20 C.F.R. § 404.1520c(c)(2).

Finally, Plaintiff points to treatment notes and opinions in the record that in her view are consistent with the opinion of Mulcahy and Joyal.  (Doc. 13-2 at 8–9 (citing AR 662–64 (intake interview from Ms. Mulcahy observing symptoms consistent with depression, anxiety, and suicidal ideation); AR 1031, 1038, 1053–54 (records describing claimant's emergency-room care to screen claimant for depression and suicidal ideation and Ms. Mulcahy's arrangement for that care); AR 880, 882, 904, 923, 931, 940, 953, 959, 994, 995, 1000, 1002, 1006 (treatment notes describing claimant as presenting at sessions tearful, sad, crying, upset, and/or depressed); AR 917 (opinion from state agency examiner, Dr. Korgeski, assessing PTSD, "chronic depressive disorder, panic disorder, possible ADD by history, social anxiety, and cocaine use disorder in remission").)  However, "whether there is substantial evidence supporting the [claimant's] view is not the question here; rather, [the court] must decide whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citing *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the determination, it must be upheld.")).

The ALJ properly discussed the factors of supportability and consistency in finding unpersuasive the opinion of Mulcahy and Joyal, and substantial evidence supports that finding. Therefore, the ALJ did not err in her assessment of the opinion of Mulcahy and Joyal.

### 3. NP Funk-Weyant's Opinion Regarding Plaintiff's Physical Capabilities

On June 20, 2019, NP Funk-Weyant also provided an opinion on Plaintiff's physical limitation.  She determined that Plaintiff could sit for five hours, stand for two hours, and walk for three hours in an eight-hour workday (AR 1117); that due to low back pain, Plaintiff would need to change positions or lie down every 15 to 30 minutes (*id.*); and that due to carpal tunnel symptoms in her left hand "4 y[ea]rs ago," Plaintiff could "[f]requently" reach overhead, handle,

finger, feel, and push/pull; and could "[o]ccasionally" reach in directions other than overhead (AR 1118).  NP Funk-Weyant also opined that Plaintiff can "[o]ccasionally" lift or carry up to 20 pounds but "[n]ever" lift or carry 21 pounds or heavier (AR 1116); "[o]ccasionally" climb stairs and ramps, climb ladders and scaffolds, balance, and kneel; and "[n]ever" stoop, crouch, or crawl (AR 1119).

Although the ALJ made several findings that are consistent with NP Funk-Weyant's opinion,[9] she ultimately found the opinion unpersuasive.  (AR 277.)  The ALJ based this conclusion on the fact that the opinion was in checklist form and was based on Plaintiff's self-reports.  (*Id.*)  The ALJ further found that "the excessive limitations contained [in the opinion] are not supported by the longitudinal record, including physical and neurological examination findings, imaging results, and [Plaintiff's] reported activities of daily living."  (*Id.*)

The ALJ properly assessed this opinion.  First, NP Funk-Weyant did not provide objective medical evidence to support her opinion about Plaintiff's physical limitations.  Although she cited spondylolisthesis and bilateral sacroiliitis (AR 1116), these are only diagnoses of Plaintiff's conditions, which do not qualify as "[o]bjective medical evidence" under the regulations, 20 C.F.R. § 404.1502(f).  Additionally, NP Funk-Weyant clarified after she submitted the checklist opinion that she completed the form "with [Plaintiff]."  (AR 1167.)[10]

---

[9]  (*Compare* AR 259 (ALJ concluding that "she could not climb ladders, ropes[,] or scaffolds") *with* AR 1119 (NP Funk-Weyant opining that claimant could occasionally climb ladders, scaffolds, stairs, and ramps); *compare* AR 259 (ALJ concluding that "she could not be exposed to hazards such as unprotected heights" and "[s]he must avoid exposure to extreme cold . . . .") *with* AR 1120 (NP Funk-Weyant opining that claimant should never be exposed to unprotected heights or extreme cold); *compare* AR 259 (ALJ concluding "[s]he would be limited to work environments with no more than moderate noise level . . . .") *with* AR 1120 (NP Funk-Weyant opining that claimant could tolerate moderate noise, such as noise from an office environment).)

[10]  NP Funk-Weyant further noted that "[t]he questions were asked [of Plaintiff] with the intention of what she was capable of doing on a 'good' day."  (AR 1167.)  This notation suggests that the identified physical limitations relied at least in part on Plaintiff's self-reporting.

While a claimant's self-reported symptoms certainly are relevant to the provider's determination of a person's physical limitations, and although the ALJ "is required" to take these self-reported symptoms into account, the ALJ "is not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  Accordingly, subjective complaints alone cannot support a provider's opinion.  *See Merkley v. Comm'r of Soc. Sec.*, No. 7:16-CV-1394 (GTS), 2017 WL 4512448, at *4 (N.D.N.Y. Oct. 10, 2017) ("A source's reliance on a claimant's subjective reports rather than the medical evidence constitutes a good reason for affording less weight to a medical opinion, even from a treating physician.").  Here, NP Funk-Weyant provided no objective medical evidence to support her opinion regarding Plaintiff's physical limitations, and thus the ALJ reasonably found that the opinion was not well supported.

Substantial evidence also supports the ALJ's assessment that NP Funk-Weyant's opinion was inconsistent with the longitudinal record.  NP Funk-Weyant opined that Plaintiff had significant limitations in standing, walking, and manipulation.  (*See* AR 1116–18.)  However, as the ALJ noted, the "physical and neurological examination findings, imaging results, and the claimant's reported activities of daily living" were inconsistent with these limitations.  (AR 277.)  For example, a February 2018 radiology report showed "[n]o active disease" and "mild degenerative changes of the thoracic spine."  (AR 650.)  While NP Funk-Weyant opined that Plaintiff could not walk for more than three hours, stand for more than two hours, or sit for more than five hours (AR 1117), Dr. Knisely opined that this mild thoracolumbar[11] pathology only contributed to a limitation of walking, standing, and sitting for six hours (AR 385).  In May 2018, state consultative examiner Roger Kellogg, MD, observed some low back tenderness but

---

[11] Thoracolumbar "[r]elat[es] to the thoracic and lumbar portions of the vertebral column" or "the origins of the sympathetic division of the autonomic nervous system."  *Thoracolumbar*, Stedmans Medical Dictionary 916940, Westlaw (database updated November 2014).

intact sensation, and Plaintiff walked out of the office reasonably well with no limp.  (AR 861.)
Dr. Leyse and NP Stephani also noted Plaintiff's normal gait.  (AR 870, 1027.)  In June 2018,
while Plaintiff reported that she could walk only six to seven blocks before stopping from the
pain, she simultaneously reported "all day walking around."  (AR 869.)  In December 2018,
Plaintiff could rise on her heels and toes and showed erect posture, normal gait, full range of
motion, full strength, and a straight leg raise that was "negative for any tension signs."  (AR
967.)  Images at that time showed only mild degenerative facet arthrosis and minimal
anterolisthesis.  (*See* AR 967, 972.)  Providers thereafter continued to note normal gait.  (AR
979, 984, 1107.)  And the record contains no evidence of significant abnormality in the upper
extremities.  The ALJ thus properly determined that NP Funk-Weyant's opinion regarding
Plaintiff's physical capabilities was inconsistent with examination findings, imaging results, and
Plaintiff's daily activities.

Plaintiff asserts that the ALJ failed to specify which of Plaintiff's daily activities were
inconsistent with NP Funk-Weyant's opinion.  (Doc. 13-2 at 10.)  However, such an omission
does not mean those activities were not considered.  *Brault*, 683 F.3d at 448 ("[F]ailure to cite
specific evidence does not indicate that such evidence was not considered.").  Plaintiff also
generally asserts that the ALJ's characterization of NP Funk-Weyant's opined limitations as
excessive was "speculative."  (Doc. 13-2 at 10.)  The record supports the ALJ's finding that the
opinion was inconsistent with the record evidence, and Plaintiff has not shown that a reasonable
factfinder would "*have to conclude otherwise*."  *See Brault*, 683 F.3d at 448.  Because the ALJ
discussed the factors set forth in 20 C.F.R. § 404.1520c(c) in finding NP Funk-Weyant's opinion
on Plaintiff's physical limitations to be unpersuasive, and because that finding is supported by
substantial evidence, the Court finds no error.

####     4.     Dr. Knisely's Opinion

On July 19, 2018, non-treating, non-examining state agency consulting physician

Dr. Knisely provided an RFC assessment for Plaintiff.  (AR 388–91.)  Based on his review of the

record, Dr. Knisely noted that Plaintiff suffered from diverticulosis, mild thoracolumbar

pathology, minimal knee osteoarthritis, mild hand osteoarthritis, and "chronic pain, exacerbated

by obesity," among other conditions.  (AR 388.)  Dr. Knisely opined that Plaintiff's

diverticulosis "do[es] not limit her," but found that she was limited to lifting and carrying

10 pounds frequently and 20 pounds occasionally; and sitting, standing, and walking for about

six hours in an eight-hour workday.  (*Id.*)  The ALJ found this opinion "partially persuasive" but

added further limitations—including an inability to climb ladders, ropes, or scaffolds; and an

ability to "engage in other postural maneuvers on an occasional basis"—based on updated

medical evidence and Plaintiff's testimony.  (AR 275.)

Plaintiff asserts that the ALJ should have given less value to Dr. Knisely's opinion

because he failed to review all the medical records from the period under review, including

NP Funk-Weyant's opinion.  (Doc. 13-2 at 11.)  But there is no "unqualified rule that a medical

opinion is superseded by additional material in the record."  *Camille v. Colvin*, 652 F. App'x 25,

28 n.4 (2d Cir. 2016).  The opinion retains its persuasive value so long as "the additional

evidence does not raise doubts as to the reliability" of the opinion or "differ materially" from the

evidence originally considered.  *Id.*; *see Karen S. v. Comm'r of Soc. Sec.*, Case No. 2:18-cv-

00099, 2020 WL 4670911, at *13 (D. Vt. Aug. 11, 2020) (holding that a state agency

consultant's opinion does not inevitably "become 'stale' due to the existence of subsequent

medical records" (quoting *Camille*, 652 F. App'x at 28 n.3)).  Plaintiff does not clarify how

additional medical records that were created after Dr. Knisely's review of the record differ

"materially" from the evidence reviewed by Dr. Knisely.  Indeed, the additional records are similar to the records that Dr. Knisely possessed.  For example, Dr. Knisely reviewed evidence showing normal gait and negative straight leg raise (AR 384), and the evidence he did not review indicated the same (*see* AR 870, 967 (normal gait and negative straight leg raise), 979, 984, 1027, 1107 (normal gait)).  Further, Dr. Knisely reviewed evidence of early degeneration in Plaintiff's spine (AR 384), and images he did not review indicated little to no change in this condition (AR 967, 972).  Even if Dr. Knisely had reviewed NP Funk-Weyant's opinion, the ALJ reasonably found her opinion was not persuasive because it was inconsistent with this evidence.  The ALJ thus did not err in the assessment of Dr. Knisely's opinion.

### 5.    Dr. Petty and Dr. Warren's Opinions

On April 3, 2018, state agency psychological consultant John Petty, PsyD., stated that Plaintiff had severe impairments of obesity and depression, and non-severe impairments of back disorders and dysfunction of the major joints.  (AR 369.)  He also found that Plaintiff had mild limitations in understanding, remembering, or applying information and moderate limitation in the other three "B" criteria of the listings.  (AR 370 (interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself).)  While Dr. Petty found that Plaintiff's depression "may occasionally interfere with her [concentration and persistence capacities]," he opined that Plaintiff could still maintain those capacities "for 2-hour periods over an 8-hour day/40-hour week."  (AR 372.)  He also opined that she was "restricted from frequent and/or intense interactions," though she could "engage in brief, infrequent, and non-intense interactions w[ith] supervisors and coworkers."  (AR 373.)  While he opined that Plaintiff was limited to performing unskilled work, he also stated that she "does not have [any] identifiable phys[ical] limitations to her residual functional base."  (AR 374.)

On reconsideration, state agency psychological consultant John J. Warren, EdD., found that Plaintiff's impairments of obesity, depression, back disorders, and dysfunction of the major joints were all severe (AR 385–86), but he found that Plaintiff still had the same mental health limitations that Dr. Petty had found (AR 389–91).  As a result, Dr. Warren determined that Plaintiff was limited to performing light, unskilled work.  (AR 392.)

Although the ALJ acknowledged that "these opinions are from non-examining and non-treating expert sources," she nevertheless found Dr. Petty and Dr. Warren's opinions to be persuasive.  (AR 275.)  In support of this determination, the ALJ noted that the consultants (i) "are experienced in the evaluation of disability claims" and "have familiarity" with the applicable regulations; (ii) "supported their opinions with citations to specific evidence of record"; and (iii) "are consistent with significant other evidence of record [and] the claimant's prescribed course of mental health treatment, benign mental status examinations, and the claimant's own description of her daily activities."  (*Id.*)

Plaintiff asserts that Drs. Petty and Warren did not review all the mental health treatment records or opinions within the applicable period before forming their opinion, or review NP Funk-Weyant's or Mulcahy and Joyal's opinions, which should have rendered the consultants' opinion less persuasive.  (Doc. 13-2 at 11–12.)  However, Plaintiff has not shown that the additional records or opinions "differ materially" from the record evidence under Dr. Petty and Dr. Warren's review.  *See Camille*, 652 F. App'x at 28.  Many of the treatment notes reported stressors that Plaintiff encountered before and after Dr. Petty and Dr. Warren's review of the record.  (*Compare* AR 804, 813 818, 819 (describing claimant's discussions regarding lack of stable housing and familial relationship difficulties) *with* AR 942, 944, 951, 953 (same).)  Despite these stressors, when Mulcahy and Joyal met with Plaintiff after Drs. Petty

and Warren, they observed that Plaintiff was showing "a lot of progress" in therapy sessions in her ability to handle stress around living environment and traumatic memories of her ex-husband.  (AR 965; *see also* AR 887 (reporting that, on April 13, 2018, claimant was "feeling happy," "getting out and doing things as required by the shelter," and "setting limits with former housemate"); AR 893 (noting that, on May 9, 2018, claimant "showed insight and progress towards goals" and "ha[d] less depressive symptoms"); AR 946 (describing claimant on October 3, 2018 as "bright and talkative").)

Accordingly, the ALJ properly assessed the medical opinion evidence, and substantial evidence supports that assessment.

## II.    The ALJ did not err in the RFC assessment.

Plaintiff also argues that the ALJ erred by failing to incorporate Plaintiff's severe impairments into the RFC and by not considering Plaintiff's time off from work when she attends medical appointments.  Neither of these arguments has merit.

### A.    The ALJ committed no error in identifying several severe impairments but not including corresponding limitations in Plaintiff's RFC.

Plaintiff contends that the ALJ should have explicitly analyzed why Plaintiff's diverticulitis/diverticulosis/irritable bowel syndrome, anxiety disorder/social anxiety/panic disorder, and PTSD caused Plaintiff no limitation.  (Doc. 13-2 at 12 (citing 20 C.F.R. § 404.1545(a)(1)–(2)).)  Specifically, Plaintiff argues that Social Security Ruling 85-16 required the ALJ to "explain how she evaluated limitations caused by anxiety and PTSD."  (*Id.* (citing SSR 85-16, 1985 WL 56855, at *1 (Jan. 1, 1985)).)  Additionally, because the state agency consultants did not identify these severe impairments, Plaintiff contends that the ALJ impermissibly assessed these impairments with no correlating limitations "based upon her own opinions."  (*Id.*)  For example, although Dr. Knisely found that diverticulosis did not limit

Plaintiff in any way, the ALJ nonetheless found diverticulitis/diverticulosis/irritable bowel syndrome to be a severe impairment at step two of the sequential analysis.  (*Id.* at 11 (citing SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)).)

The ALJ did not err by finding that Plaintiff's diverticulitis/diverticulosis/irritable bowel syndrome, anxiety disorder/social anxiety/panic disorder and PTSD were severe impairments while not incorporating corresponding limitations based on those impairments into the RFC determination.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases.").  "[T]he fact that an ALJ makes a 'severity' finding with respect to a particular impairment at step two does not necessarily mean that such impairment imposes functional limitations on the claimant which must be incorporated into the claimant's RFC."  *Quimby v. Comm'r of Soc. Sec.*, Civil Action No. 1:09-CV-20, 2010 WL 2425904, at *16 (D. Vt. Apr. 13, 2010), *report and recommendation adopted sub nom. Quimby v. Astrue*, No. 1:09-CV-20, 2010 WL 2425903 (June 8, 2010).  Therefore, the ALJ was not obliged to find that Plaintiff was functionally limited by her diverticulitis/diverticulosis/irritable bowel syndrome, anxiety disorder/social anxiety/panic disorder and PTSD, even though the ALJ found these impairments to be severe impairments at step two of the sequential analysis.

An ALJ's conclusions also need not "perfectly correspond with any of the opinions of medical sources cited in his decision" because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Thus, even if Drs. Petty and Warren did not

diagnose Plaintiff with anxiety or PTSD, these impairments are consistent with the diagnoses in

NP Funk-Weyant's opinion (*see* AR 1114), which the ALJ found to be partially persuasive (AR

276).  Additionally, the ALJ's findings regarding Plaintiff's diverticulosis are consistent with

those of Dr. Knisely, for they both found that the impairment did not limit Plaintiff's

functionality.  (*See* AR 273, 388.)  The evidence in the record supports this finding: Other than

her initial diverticulitis diagnosis in May 2018 (AR 865), and flare-ups in September 2018 and

January and May 2019 (AR 979, 1020, 1107), Plaintiff was "asymptomatic" with respect to her

diverticulosis, with most of her abdominal examinations showing normal results (AR 1024–25,

1046, 1080).  To refute this evidence, Plaintiff cites only her own statements that she

experienced pain and needed to be near a bathroom for half an hour after eating (AR 320), and

that she would be off task due to diverticulitis pain (Doc. 13-2 at 12).  These subjective

complaints alone do not demonstrate that Plaintiff's diverticulosis limited her ability to work,

and the ALJ "is not required to accept [her] subjective complaints without question."  *See*

*Genier*, 606 F.3d at 49.

Accordingly, the ALJ committed no error in identifying several of Plaintiff's severe

impairments but not imposing corresponding limitations in Plaintiff's RFC.

**B.      Plaintiff's alleged need to attend medical appointments does not preclude her
from working.**

Plaintiff also contends that her weekly mental health appointments and other monthly

medical appointments would cause her to be absent from work such that she could not perform

substantial gainful activity.  (Doc. 13-2 at 12–13.)  She notes that according to the vocational

expert testimony, an employer will only tolerate an employee's absence from work one day per

month.  (*Id.* at 13 n.2 (citing AR 353).)  However, Plaintiff's cited authority is inapposite.  (*See*

Doc. 15 at 2 (citing *Shoemaker v. Saul*, No. 1:19CV441, 2020 WL 5117992, at *6 (M.D.N.C.

Aug. 31, 2020)).  In *Shoemaker*, the plaintiff argued not simply that she "may have various medical appointments, but rather that treatment of [her] severe impairment requires bi-weekly infusions with treatment taking 3 to 5 hours each time."  2020 WL 5117992, at *5.

By contrast, Plaintiff vaguely claims that she would miss time at work once a week for mental health appointments (AR 327; *see* AR 630), and at least once a month for medical appointments (Doc. 13-2 at 12), "with either her primary care provider, counselor, orthopedic provider, physical therapist, and/or others" (Doc. 15 at 1).  To substantiate her anticipated absences from work, Plaintiff notes attending seven physical therapy sessions (AR 1124) and several "unscheduled medical appointments" for a mental health crisis (AR 617, 624) and a diverticulitis flare-up (AR 1027–28).  But there is no indication in the record that physical therapy will resume, and a few unscheduled appointments do not show that Plaintiff will routinely have monthly medical appointments for her physical health.  Even if she did have such routine appointments, Plaintiff does not specify how long any of her medical appointments would be.  Nor does Plaintiff assert that these appointments could not be scheduled for a time outside the workday.  While Plaintiff notes that Mulcahy and Joyal opined that Plaintiff would be absent for four or more days per month due to periodic medical treatment and her medical impairments (AR 1175), they did not explain how these appointments contributed to four full days away from work.  It is the plaintiff's burden "to show that the frequency of her treatments is a limitation that should have been accounted for at Step [Four] of the sequential analysis." *Shoemaker*, 2020 WL 5117992, at *6.  Plaintiff has not sustained that burden here.  *See Samantha R v. Comm'r of Soc. Sec.*, No. 20-CV-0440-MJR, 2021 WL 2820987, at *5 (W.D.N.Y. July 7, 2021) ("[T]he need for a medical visit does not necessarily equate to missing

an entire day of work and . . . the need for multiple medical visits does not compel disabling absenteeism.").

Plaintiff has not established that her need to attend medical appointments would amount to disabling absenteeism.  The ALJ did not err in failing to incorporate these appointments into the RFC assessment.

### III.    The new evidence before the Appeals Council does not require remand.

Plaintiff contends that her case should be remanded because new evidence submitted to the Appeals Council after the ALJ's decision creates a reasonable probability that the ALJ would have reached a different conclusion.  (Doc. 13-2 at 2.)  This new evidence included treatment notes (AR 69–78) and an opinion from treating orthopedic provider Nurse Practitioner Sarah L. Britton dated October 4, 2019 (AR 233–39); treatment notes from July 2019 to July 2020 from Central Vermont Medical Center related to Plaintiff's back impairment (AR 135–75); and treatment records from Dartmouth Hitchcock Medical Center dated November 2019 to February 2020 related to Plaintiff's diverticulitis (AR 204–27).

Upon a party's request, the Appeals Council will review a case if provided "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).  Such "new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."  *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996).  "Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the

evidence currently of record.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting prior version of 20 C.F.R. § 404.970(a)(3)). "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

If the Appeals Council denies a request for review, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis*, 805 F.3d at 87. "The Appeals Council's reasoning for denying review therefore has no bearing on the court's review of the Commissioner's decision." *Jessica R. v. Berryhill*, Case No. 5:17-cv-236, 2019 WL 1379875, at *4 (D. Vt. Mar. 27, 2019). The issue that remains is "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require" remand. *Canady v. Comm'r of Soc. Sec.*, No. 117CV0367GTSWBC, 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017), *report and recommendation adopted*, No. 117CV0367GTSWBC, 2017 WL 5484663 (Nov. 14, 2017).

### A.  NP Britton's Opinion

NP Britton's opinion does not dramatically alter the weight of the evidence as to require remand to the Commissioner. First, several of the limitations contained in the opinion are either consistent with, or less restrictive than, the ALJ's RFC findings. (*Compare* AR 237 (NP Britton finding plaintiff can never climb ladders or scaffolds but can occasionally climb ramps or stairs, stoop, kneel, and crawl) *with* AR 259 (ALJ finding same); *compare* AR 238 (NP Britton finding plaintiff can tolerate occasional exposure to humidity, wetness, and vibration; and no exposure to heights) *with* AR 259 (ALJ finding same).) In fact, many of the limitations contained in Britton's opinion are less restrictive than the ALJ's RFC findings. (*Compare* AR 234 (NP

Britton finding plaintiff can continuously lift or carry 10 pounds and frequently lift or carry

20 pounds) *with* AR 259 (ALJ finding plaintiff can lift or carry no more than 20 pounds and

frequently lift or carry up to 10 pounds by citing 20 C.F.R. §§ 404.1567(b), 416.967(b));

*compare* AR 237 (NP Britton finding plaintiff can frequently balance) *with* AR 259 (ALJ finding

plaintiff can occasionally balance); *compare* AR 238 (NP Britton finding plaintiff can tolerate

occasional exposure to extreme cold; frequent exposure to pulmonary irritants with protective

equipment; and exposure to loud noise) *with* AR 259 (ALJ finding plaintiff can tolerate no

exposure to extreme cold; occasional exposure to pulmonary irritants; and exposure to no more

than moderate noise).)

Additionally, NP Britton's findings that differ from the ALJ's RFC determination do not

dramatically alter the weight of the evidence already before the ALJ when she made her

decision.  For example, NP Britton opined that more significant limitations apply to Plaintiff's

ability to crouch and be exposed to extreme heat than the ALJ found, but none of the jobs that

the ALJ determined Plaintiff could perform is affected by these limitations.  *See Dictionary of*

*Occupational Titles* § 208.685-010, 1991 WL 671753 (U.S. Dep't of Labor 1991) (collator

operator); *id.* § 209.587-034, 1991 WL 671802 (price marker); *id.* § 222.687-022, 1991 WL

672133 (mail sorter).  NP Britton also opined that Plaintiff could only occasionally push or pull

with her upper extremities, while the ALJ's RFC determination contained no such limitation.

However, NP Britton did not support this limitation with any objective medical evidence.  (*See*

AR 236.)  It is also not consistent with Dr. Knisely's diagnosis of mild hand osteoarthritis, which

resulted in no limitation on her ability to push or pull (AR 388), and NP Funk-Weyant's opinion

that Plaintiff can frequently push, pull, feel, finger, handle, or reach overhead despite the carpal

tunnel in her left hand (*see* AR 1118).

NP Britton's opinion that Plaintiff could stand or walk for only a total of two hours in a workday and ten minutes at a time—as opposed to the ALJ's finding that Plaintiff could stand or walk for a total of six hours per workday, *see* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983)—also does not require a remand.  First, Britton did not provide sufficient support for her opinion.  When asked to provide "medical or clinical findings . . . which support your assessment or any limitations and why the findings support the assessment," NP Britton stated only that Plaintiff's sacroiliitis limits her because she has "good, but minimal lasting relief with injections."  (AR 235.)  This conclusory explanation does not provide adequate support for Britton's opined limitation on Plaintiff's ability to stand or walk.  Britton also explains that "[d]epression, anxiety and overall psychosocial state put [Plaintiff] at high risk for failed back syndrome," but she states that that risk exists only in the event that "surgery for SI joint fusion [is] contemplated."  (*Id.*)  As the record does not indicate that Plaintiff has undergone this surgery, Britton's opinion does not reasonably support this limitation on her ability to stand or walk.  Finally, the ALJ rejected NP Funk-Weyant's similar opinion as inconsistent with the record.  (AR 277; *see* AR 1117 (NP Funk-Weyant limiting claimant to sitting for a total of five hours and two hours at a time and standing for a total of two hours and fifteen minutes at a time).)

NP Britton's opinion therefore does not so dramatically alter the weight of the evidence as to require a remand for further review and decision.

### B.    Additional Record Evidence

The new treatment records from Central Vermont Medical Center (AR 135–75) and Dartmouth Hitchcock Medical Center (AR 204–27) also do not dramatically alter the weight of the evidence.  First, the records related to Plaintiff's back pain are not materially different from what the ALJ reviewed.  Instead, the notes appear to provide documentation of more injections

that Plaintiff received in her sacroiliac joints, which the ALJ was aware Plaintiff had previously received in April 2019.  (*See* AR 270, 1048.)  Further, Plaintiff observed in July 2019 that those injections had improved her back pain by 75 to 80 percent.  (AR 70.)  Because this new evidence presents information that remains consistent with—or documents improvement of—Plaintiff's reported condition in treatment notes before the ALJ, remand is not required.

New records documenting Plaintiff's intestinal pain also do not dramatically alter the weight of the record evidence.  The Appeals Council found that Plaintiff's diverticulitis records from Dartmouth Hitchcock from November 2019 to February 2020 did not relate to the period at issue—i.e., on or before September 5, 2019.  Plaintiff does not contest this finding.  Even if these records related to the period of disability, the ALJ found that diverticulitis/diverticulosis/irritable bowel syndrome was a severe impairment, based on the diverticulitis flare-ups that Plaintiff experienced in September 2018 and January and May 2019.  (*See* AR 273.)  The new records do not show significant change in this impairment; they merely reveal that Plaintiff was not having a diverticulitis flare-up when she began treatment in November 2019.  (*See* AR 209 (noting that testing revealed "evolving or resolving diverticulitis" and giving recommendations for "next time [she] start[s] getting signs of diverticulitis"), 179 (showing in November 2019 diverticulosis "without diverticulitis").)  Although Plaintiff underwent colon surgery to address her diverticulosis after the ALJ issued her decision, the ALJ reviewed records from February 2019 stating that they planned on scheduling her colon surgery.  (*See* AR 982.)

Accordingly, none of the new evidence that Plaintiff submitted alters the evidence so dramatically as to require a remand to the Commissioner.

## <u>Conclusion</u>

For these reasons, the Court DENIES Plaintiff's motion (Doc. 13), GRANTS the

Commissioner's motion (Doc. 14), and AFFIRMS the decision of the Commissioner.  The Clerk

shall enter judgment in favor of the Commissioner.

Dated at Burlington, in the District of Vermont, this 3rd day of June 2022.


*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge